IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANN-MEGAN KENDALL,<br><br>                       Plaintiff,<br>v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>                       Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br>Case No. 2:13-CV-259 TS<br><br>District Judge Ted Stewart |

This matter comes before the Court on Plaintiff Ann-Megan Kendall's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits and supplemental social security income. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1]  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3] *Id.*

1

affirmed.[4]  The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

## II.  BACKGROUND

A.   PROCEDURAL HISTORY

In November 2009, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on July 15, 2005.[7]  The claim was denied initially on July 15, 2010,[8] and upon reconsideration on October 22, 2010.[9]  Plaintiff then requested a hearing before an ALJ, which was held on November 7, 2011.[10]  The ALJ issued a decision on November 28, 2011, finding that Plaintiff was not disabled.[11]  The Appeals Council denied Plaintiff's request for review on March 4, 2013.[12]  Plaintiff then filed the instant action.

B.   MEDICAL HISTORY

Plaintiff claims disability beginning in 2005 as a result of several impairments, including fibromyalgia, thyroid disease, anxiety, and depression.[13]  Plaintiff sought treatment for instability in her ankles in 2005 and 2006, and underwent surgery on her ankles during that time.  The

---

[4] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[7] R. at 120–34.

[8] *Id.* at 63–64.

[9] *Id.* at 65–66.

[10] *Id.* at 35–62.

[11] *Id.* at 11–34.

[12] *Id.* at 1–5.

[13] *Id.* at 166.

record contains no medical records from 2007. The only records from 2008 relate to two blood draws.

In February 2009, Plaintiff underwent a procedure called quantitative electroencephalographic topographic brain mapping at the Scottsdale Neurofeedback Institute & Attention Deficit Disorder Clinic.[14] This analysis showed a possible traumatic brain injury in the "mild range of severity" and a possible learning disability in the "severe range of severity."[15]

On October 9, 2009, John W. Whitaker, D.O., provided a letter, but no supporting documents, stating that Plaintiff had been diagnosed with chronic fatigue syndrome, fibromyalgia, and autoimmune thyroiditis.[16] Dr. Whitaker stated that Plaintiff was also being treated for depression and anxiety without adequate relief.[17] Dr. Whitaker noted that he had seen Plaintiff three times since July 2009, but Plaintiff had made only "modest and intermittent improvements."[18] Dr. Whitaker recommended that Plaintiff "not attempt to work" and that his recommendation "should hold for the next 12 months."[19]

On March 8, 2010, Plaintiff was seen by Dr. Liana Au for her annual exam.[20] Plaintiff was in no acute distress and rated her pain as a one out of ten.[21] Plaintiff was diagnosed with asthma.[22]

---

[14] *Id.* at 251–54.

[15] *Id.* at 253–54.

[16] *Id.* at 542.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 271.

[21] *Id.* at 271–72.

[22] *Id.* at 272.

Plaintiff was seen at the Merrill Gappmayer Family Medicine Center on March 25, 2010, for possible bronchitis.[23] Plaintiff was diagnosed with acute bronchitis and was prescribed over-the-counter medications.[24]

On April 28, 2010, Plaintiff was seen by Dr. Au for depression.[25] Plaintiff stated that she could go a week or two feeling well, but would then get very depressed.[26] She indicated that chronic pain was a trigger for her depression, and that she had been depressed for fifteen years and in pain for the last five years.[27] Plaintiff had been prescribed various medications with no significant improvement, but rather slight worsening.[28] Plaintiff was assessed with bipolar disorder, fibromyalgia, hypothyroidism, and allergic rhinitis.[29]

On May 1, 2010, Justin R. Johnsen, M.D., conducted a consultative examination of Plaintiff.[30] During the exam, Plaintiff noted her pain was a six out of ten, but that it was usually an eight out of ten.[31] Plaintiff stated that she could sit for an hour, stand for ten to fifteen minutes, walk half a block, and lift five pounds.[32] Upon examination, Dr. Johnsen found that Plaintiff was in no acute distress.[33] Dr. Johnsen noted that Plaintiff had a symmetric, steady gate; had no palpable muscle spasms; her muscle bulk and tone were within normal limits; and

---

[23] *Id.* at 274.

[24] *Id.* at 275.

[25] *Id.* at 276.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 278.

[30] *Id.* at 256–60.

[31] *Id.* at 256.

[32] *Id.*

[33] *Id.* at 258.

her muscle strength was a five out of five in all areas.[34] Dr. Johnsen found that Plaintiff could lift, carry, and handle light objects; squat and rise from that position with ease; rise from a sitting position without assistance; had no difficulty getting up and down from the exam table; could walk on heels and toes; and her range of motion was all within normal limits.[35] Dr. Johnsen found that Plaintiff had fibromyalgia and thyroid disease.[36] While Dr. Johnsen believed that Plaintiff's fibromyalgia would limit Plaintiff's ability to perform strenuous activity, neither that condition nor her thyroid disease would further limit her ability to work.[37]

On May 12, 2010, Plaintiff was diagnosed with pain, fatigue, depression, and arthritis.[38] On May 21, 2010, Plaintiff was seen by Dr. Au.[39] Plaintiff reported her pain as a three out of ten.[40] Plaintiff complained of depressed mood, loss of interest, diminished sense of pleasure, significant fatigue, feelings of guilt and worthlessness, diminished concentration and decisiveness, somatic symptoms including pain, feelings of helplessness or hopelessness, restlessness, feeling withdrawn, irritability, and poor social functioning.[41] Dr. Au diagnosed Plaintiff with bipolar disorder, fibromyalgia, and fatigue.[42]

On May 25, 2010, Plaintiff was evaluated by Tanya Colledge, Psy.D., for Disability Determination Services.[43] Dr. Colledge diagnosed Plaintiff with major depressive disorder,

---

[34] *Id.* at 259.

[35] *Id.*

[36] *Id.* at 260.

[37] *Id.*

[38] *Id.* at 292.

[39] *Id.* at 279–81.

[40] *Id.* at 279.

[41] *Id.*

[42] *Id.* at 280.

[43] *Id.* at 283–88.

anxiety disorder, borderline personality disorder, and fibromyalgia.[44] Dr. Colledge opined that Plaintiff "is capable of leading an independent life with minimal supervision."[45] Dr. Colledge stated that Plaintiff could take care of her basic needs and was capable of preparing meals for herself and completing basic household chores, though she often did not do these things for herself and instead relied upon her family.[46] Dr. Colledge believed that Plaintiff was capable of basic work tasks and "appears to have the skills and abilities necessary to function in a traditional competitive work environment."[47] Dr. Colledge noted that Plaintiff "presents as someone who prefers to stay sick rather than seek treatment that may help her get better. She uses the idea that her mother and chronic fatigue syndrome as a mechanism to justify her situation rather than look at ways to improve her situation."[48]

Plaintiff had a follow-up visit with Dr. Au on July 16, 2010.[49] Plaintiff stated that she was in pain "all over," but noted that her pain was a three out of ten.[50] Plaintiff was diagnosed with fibromyalgia and depression.[51] Dr. Au "strongly reinforced" the importance of exercise in improving Plaintiff's condition, instructing her to start exercising for fifteen minutes every other day, working her way up to thirty minutes.[52]

---

[44] *Id.* at 287.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.* at 288.

[49] *Id.* at 338–40.

[50] *Id.* at 338.

[51] *Id.* at 339.

[52] *Id.*

Plaintiff returned to Dr. Au on August 30, 2010.[53] Plaintiff stated that she "hurts all over," but indicated her mood had improved and that she had started exercising.[54] Dr. Au prescribed Lyrica in addition to Plaintiff's other medications.[55]

Two state agency physicians, David Peterson, M.D., and Rox Burkett, M.D., concluded that Plaintiff could perform a full range of light work.[56] Joan Zone, Ph.D., completed a Psychiatric Review Technique form wherein she found that Plaintiff had no restriction of activities of daily living; mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation.[57]

C.   HEARING TESTIMONY

At the hearing, the ALJ received testimony from Plaintiff and a vocational expert. Plaintiff claimed disability based on anxiety, depression, and fibromyalgia.[58] Plaintiff described her symptoms as being very painful.[59] She stated that it felt like she had the flu every day.[60]

Plaintiff stated that she could walk for about ten to fifteen minutes before she had to take a rest for a few minutes, then she could walk for another ten to fifteen minutes.[61] Plaintiff stated that she spends most of her day lying down and sleeping.[62] Plaintiff stated that it was difficult to

---

[53] *Id.* at 341–43.

[54] *Id.* at 341.

[55] *Id.* at 342.

[56] *Id.* at 313–20, 344.

[57] *Id.* at 332.

[58] *Id.* at 40.

[59] *Id.* at 41.

[60] *Id.*

[61] *Id.* at 41–42.

[62] *Id.* at 43.

do certain things, like take care of her dog or sit through a movie, because of her pain.[63] Plaintiff did state, however, that she is able to ride to Henderson, Nevada, once a month to see her doctor, though she and her mother have to stop a number of times along the way.[64]

Plaintiff further testified that pain and fatigue prevented her from helping with household chores, such as cleaning and doing laundry.[65] Plaintiff stated that she is able to check her email account on a daily basis, though she cannot type for more than five minutes.[66] Plaintiff further stated that she is sensitive to strong smells, such as heavy soaps and perfumes.[67]

In response to the ALJ's hypothetical question, the vocational expert opined that there would be jobs in the national economy that the hypothetical person could perform, including account clerk, telephone quotation clerk, and final assembler.

D.      THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 15, 2005, the alleged onset date.[68] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia; joint instability in the ankles bilaterally, status-post multiple surgeries; obesity; asthma; Major Depressive Disorder; Anxiety Disorder; and Borderline Personality Disorder.[69] At step three, the ALJ found that Plaintiff did

---

[63] *Id.* at 45–46.

[64] *Id.* at 46–47.

[65] *Id.* at 48.

[66] *Id.* at 49.

[67] *Id.* at 50.

[68] *Id.* at 16.

[69] *Id.*

not have an impairment or combination of impairments that met or equaled a listed impairment.[70] At step four, the ALJ determined that Plaintiff could perform her past relevant work from July 15, 2005, through February 26, 2009.[71] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[72]

## III. DISCUSSION

Plaintiff raises the following issues in her brief: (1) the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician; (2) the ALJ improperly evaluated Plaintiff's credibility; (3) the ALJ failed to properly determine Plaintiff's residual functional capacity; and (4) the ALJ did not meet his burden of proof at step five of the sequential evaluation.

A.   TREATING PHYSICIAN

Plaintiff first argues that the ALJ erred in his evaluation of Dr. Whitaker's opinion. The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[73] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[74] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[75] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[76]

---

[70] *Id.* at 22.

[71] *Id.* at 24–29.

[72] *Id.* at 29–30.

[73] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[74] *Id.*

[75] *Id.*

[76] *Id.*

9

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[77] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[78]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[79] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[80]

As set forth above, Dr. Whitaker recommended that Plaintiff "not attempt to work" and that his recommendation "should hold for the next 12 months."[81] The ALJ did not give Dr. Whitaker's opinion controlling weight, but rather gave it little weight.[82] The ALJ gave Dr. Whitaker's opinion little weight because it was

> conclusory, not supported in and is out of proportion with the objective medical record, is not supported with any of his treatment notes, is based to an inappropriate degree on the claimant's subjective complaints, is beyond his expertise regarding vocational issues, and is on issues reserved to the Commissioner: whether or not the claimant is disabled.[83]

---

[77] *Id.*

[78] *Id.* at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[79] *Id.*

[80] *Id.*

[81] R. at 542.

[82] *Id.* at 28.

[83] *Id.*

10

Plaintiff argues that the ALJ failed to follow the required process in evaluating Dr. Whitaker's opinion and failed to weigh that opinion in accordance with Tenth Circuit case law. The Court disagrees. First, the ALJ must determine whether the opinion is well-supported and consistent with other substantial evidence. The ALJ found that Dr. Whitaker's opinion was not supported and was inconsistent with the medical record. This conclusion is supported by substantial evidence. Therefore, the ALJ was not required to give Dr. Whitaker's opinion controlling weight.

Even if not given controlling weight, the ALJ must evaluate the opinion using the above-listed factors. Though the ALJ did not discuss all of these factors, it is clear that the ALJ evaluated Dr. Whitaker's opinion using these factors. In so doing, the ALJ provided specific, legitimate reasons for giving little weight to that opinion. Specifically, the ALJ found that Dr. Whitaker's opinion was conclusory, was not supported by the record, was not supported by Dr. Whitaker's treatment notes, was based to a large degree on Plaintiff's subjective complaints, went beyond his expertise, and concerned issues that were reserved to the Commissioner. These are all good reasons, supported by substantial evidence, that allowed the ALJ to give Dr. Whitaker's opinion little weight. Therefore, the Court finds no error in the ALJ's treatment of Dr. Whitaker's opinion.

B.    CREDIBILITY DETERMINATION

Plaintiff next contends that the ALJ erred in his credibility determination. Social Security Ruling 96-7p sets out relevant factors an ALJ should consider in determining credibility. These include:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other

symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[84]

In determining credibility, the ALJ must consider the entire case record.[85] However, the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility . . . ."[86] An ALJ's "credibility determinations are peculiarly the province of the finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence."[87]

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible.[88] In support of this conclusion, the ALJ relied on evidence related to Plaintiff's general activity level. For example, the ALJ pointed out that Plaintiff traveled approximately 400 miles every month to receive treatment.[89] The record also reflected that Plaintiff occasionally attended church services.[90] In addition, Dr. Colledge opined that Plaintiff was capable of doing much more for herself, but was enabled by her family.[91]

---

[84] SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

[85] *Id.*

[86] *Qualls*, 206 F.3d at 1372.

[87] *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995).

[88] R. at 27.

[89] *Id.* at 28.

[90] There is a dispute in the record as to how often Plaintiff attended church services, but this dispute is irrelevant to the Court's conclusion.

[91] *Id.*

The ALJ also noted that Plaintiff's condition was being treated with relatively conservative measures, such as non-prescription pain medications, rest, and exercise. This indicated "a less-severe condition than she alleged."[92] The ALJ also noted that Plaintiff gave inconsistent statements to different treatment providers concerning her pain levels around the same time period. The ALJ further noted that Plaintiff failed to follow through with prescribed treatment and that this failure negatively affected her credibility.[93] The ALJ found "that with appropriate treatment and medication and the proper work environment, the claimant's pain, symptoms, and precipitating and aggravating factors can be controlled so as to allow her to perform significant work activity."[94]

Having reviewed the evidence, the Court finds that the ALJ appropriately considered the above-listed factors and that his determination concerning Plaintiff's credibility is supported by substantial evidence. While Plaintiff asserts that it is insufficient for the ALJ to merely point to occasional, symptom-free periods, the ALJ did much more than this. The ALJ provided detailed reasons, supported by the evidence, as to why he did not believe that Plaintiff's symptoms were as limiting as she suggested. Therefore, the Court cannot find that the ALJ erred in his credibility determination.

C.   RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

Plaintiff next argues that the ALJ failed to properly determine Plaintiff's residual functional capacity. The ALJ found that from December 31, 2006, through February 26, 2009, Plaintiff had the residual functional capacity for a full range of light exertion.[95] The ALJ further

---

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.*

found that since February 27, 2009, Plaintiff had the residual functional capacity to perform sedentary work, with certain exceptions.[96]

Plaintiff argues that the ALJ failed to comply with the requirements of Social Security Ruling 96-8p. Social Security Ruling 96-8p states that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[97] The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[98]

Plaintiff argues that the ALJ's RFC analysis does not meet this standard. Having thoroughly reviewed the ALJ's decision, the Court disagrees. The ALJ clearly sets out his RFC assessment and then discusses the evidence that supports that assessment, specifically discussing the documentary evidence, the opinion evidence, and conducting a credibility assessment. While less than ideal, the Court finds no error in how the ALJ approached the RFC determination.

Plaintiff further argues that the ALJ's RFC analysis is not supported by substantial evidence. However, Plaintiff fails to point to a specific objection to the RFC determination. Without more, the Court cannot effectively review Plaintiff's argument.

D.  STEP FIVE

Plaintiff next argues that the ALJ erred at step five of the sequential evaluation process. As stated, the ALJ found that, since February 27, 2009, Plaintiff had the residual functional capacity to perform sedentary work, with certain exceptions. Based upon this residual functional capacity assessment, the ALJ found that Plaintiff was unable to perform any past relevant work

---

[96] *Id.*

[97] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[98] *Id.*

since February 27, 2009, but that Plaintiff was able to perform other work in the national economy.

The Tenth Circuit has held that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."[99] Plaintiff argues that the ALJ erred at step five by failing to resolve an apparent conflict between the mental limitations in the ALJ's residual functional capacity assessment and the requirements of two of the positions (account clerk and telephone quotation clerk) identified by the vocational expert. Plaintiff further argues that she would not be able to perform the third job identified by the vocational expert (final assembler) because of the ALJ's functional capacity limitations regarding exposure to airborne irritants as well as the limitation of no fast-paced work.

The Court need not resolve Plaintiff's arguments concerning the clerk positions because, even accepting Plaintiff's argument, she would still be able to perform work as a final assembler.[100] Plaintiff asserts that she would be unable to perform the job as final assembler because of the ALJ's limitation regarding exposure to airborne irritants and the limitation of no fast-paced work. Plaintiff cites to the *Dictionary of Occupational Titles* ("*DOT*") and the *Selected Characteristics of Occupations* ("*SCO*"). However, neither document supports Plaintiff's position that she would be unable to perform work as a final assembler. Neither the

---

[99] *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (requiring ALJ to resolve actual and apparent conflicts between vocational expert testimony and DOT).

[100] *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) ("Even assuming without deciding that he is unable to work as a sales attendant or office helper, there is no colorable dispute that substantial record evidence supports the ALJ's conclusion that he can work as a rental clerk.").

15

*DOT* nor the *SCO* includes a limit on exposure to airborne irritants or fast-paced work. Therefore, the Court must reject this argument.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court finds that the ALJ's evaluation and ruling is supported by substantial evidence.  Therefore, the Commissioner's findings must be affirmed.  Further, the Court finds that the ALJ applied the correct legal standard in determining that Plaintiff is not disabled.

For the reasons just stated, the Court hereby AFFIRMS the decision below.  The Clerk of the Court is directed to close this case forthwith.

Dated this 13th day of January, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge